from the Eastern District of Michigan in Detroit. Glad to have you aboard. Thank you very much. United States v. Castaneda-Pozo. Good morning, Your Honors. May it please the Court? My name is Rupak Ramesh Shah. I represent Alfredo Castaneda-Pozo, who I'll refer to as Mr. Castaneda. I would like to begin my presentation with the issue of the District Court's application of the Substantial Financial Hardship Enhancement, which resulted in a four-level increase in our client's or my client's guideline sentence offense level. We admitted in the briefs that there was a single victim. That was paragraph 32 of the PSR. The victim was known as the initials JM, who satisfied the requirements for substantial financial hardship. Our contention before this Court is that the District Court erred in finding that there were four of the remaining five victims that qualified and met the criteria for hardship that was substantial in nature. The standard of review is clear error for the factual findings, and it's de novo concerning the interpretation of the enhancement and also the application of the enhancement under this Court's precedent. I would note that it appears there's three Court of Appeals through the United States, the Eighth Circuit in Brandeit, the Third Circuit more recently in Polson, and the Seventh Circuit in Minhas that's had the opportunity to interpret this. It does not appear that this Court has ever had the opportunity to interpret this newly amended, modified enhancement that recently went into effect. I'm sorry. Go ahead. The question, the legal question is whether or not the hardships, which the District Judge found as fact, amount to significant harm to the victims in the case, correct? It is possible to say that, and I would actually use the terminology in the Minhas decision, which is that the hardship resulted in a significant alteration of the victim's life circumstances. There could be some set of circumstances that we are actually, that the record illuminates here where there is significant harm, but there does not appear to be some significant alteration. My sense is that the long and the short of the appeal is that these folks only lost about $400 to $800, and you and many people would probably argue that $400 to $800 in the grand scheme of things would not result in a significant financial hardship. But the Judge found, number one, they were, three were threatened with eviction. Three were forced to borrow money to make a payment. One had to work extra shifts. One had to take an extra part-time job. And these are not the types of factors that middle or even wealthy Americans would have, but for these people, it caused a significant financial hardship that would allow finding that factor as to the other four victims and therefore enhancing the sentence by four levels. Those factual features were present in the victims that Your Honor referred to. However, in going through each of them, and again, we're conceding victim JM in paragraph 32, but the remaining five in going through the actual... I guess the question is why aren't those factors, why don't they give rise to a financial hardship of significant burden for those four people? First, in looking at the newly created enhancement or the modified enhancement, it's clear both in looking at the application note for, I believe, F, that it has to be something substantial. And that application note gives examples, insolvency, bankruptcy. Closer to the issue with these victims, there's the issue of making substantial changes to his or her employment, such as postponing his or her retirement plans. Concerning the victims in paragraphs 34 and 35, those individuals, one, were ultimately reimbursed for the dollar amount stolen. So, victim MN, who lost $7.84, who, as Your Honor noted... If all four of these folks went bankrupt, you wouldn't have appealed, right? If all four filed for bankrupt, we would not be raising this claim because it would meet the plain language of the substantial financial hardship enhancement, correct. Or if they were insolvent, or if there was evidence that they delayed their retirement, or if there was evidence, for example, that they had to move. And that is the reason why we did not challenge JM in paragraph 32, because that individual alleged, and it was not disputed, the district court found, that that individual had to break his lease, incurred financial loss, moved to Maryland. I mean, he experienced the type of substantial financial harm contemplated by the plain language of the statute. In looking at, for example, victim MW, again, paragraph 35, she was allowed, or he was allowed to make missing rent payments over several months. It's acknowledged that she fell behind in the electric bill, cable bill, and she cut down on food shopping. But at the same time, given the reimbursement, given the fact that it was just a part-time job and the loss was limited to $784, and ultimately, given the language that, you know, a substantial change to employment would be postponing his or her retirement plans, it does not appear, and we contend that the application note and the enhancement was improperly applied to that individual. The list and the reason for Amendment 792 is not exhaustive. I think that's the hard part of your argument. I mean, we would have to find clear error by the district judge in the kind of evaluation of the facts surrounding each one of these folks. Isn't that right? We are not conceding those. We're not even challenging the facts in the PSR before this court. What we are challenging is the legal effect of those facts, and this court. But the effect is based on the findings of fact. I mean, at least, I mean, am I mistaken about that? I mean, the legal effect arises from the findings of fact by the district judge at sentencing, doesn't it? You know, in looking at, and again, it looks like the Third Circuit in Footnote 9 seems to have indicated that it agrees with what Your Honor said, but in looking at some of the recent precedent from this court, for example, I think as recently as October 30, 2017, in a footnote, the standard of review in another criminal prosecution case was referenced, and application of the enhancement is reviewed de novo. You mentioned, excuse me, I didn't mean to cut you off. You mentioned the Third Circuit case, Poulsen. I mean, we've got to write an opinion here that develops what the standard is. I thought the Third Circuit did a pretty good job, Judge Rendell. Did you? I have no dispute with the Third Circuit. I would actually point out that it looks like the Third Circuit copied the Second Circuit. But nonetheless, there is no dispute with that because it noted that, I mean, it went, yeah, it looked at the definition of substantial. It said there was a middle ground, substantial consistent with the regular use of the term as well as the application note, which is that, you know, the extent of the harm to the individual is to be considered. We have no dispute with that. Our dispute is if you look at these individual victims, just the fact that they were paying their rent with money orders, the fact that someone had a part-time job, the fact that they fell behind, that individual fell behind, for example, on the electric bill, that is certainly hardship. We are contending that is not substantial financial hardship. And I would also point out, I think Judge Murphy, in your honor as well, mentioned the issue of the district court's facts. The actual finding of the district court, again, those facts in the PSR are now the district court's findings. Of course, we acknowledge that. But the actual conclusion of the district court was a very succinct finding that seems to point out that because or seems to conclude that because these individuals were paying with money orders, there's a reasonable inference that they satisfied the substantial financial hardship requirement. And we objected to that in the initial brief, to that approach. And we even acknowledge that inferences, of course, can be taken. District courts, as you've seen numerous times, do that on a daily basis. But, you know, the Minhas case is a good example of where there was trial testimony in one of the cases. There was sentencing testimony. There was victim impact statements. And then a methodology was put together, you know, a procedural process to determine the extent of harm. And it was concluded that those working class folks that were deprived of their money to go to the pilgrimage to Saudi Arabia, who were deprived of that money, you know, the district court found that if they lost more than $3,000, it was determined that that is a good sign that those individuals sustained substantial financial hardship given their circumstances. The district court here seems to say that because the conspirators in this case targeted apartment complexes that had drop boxes in which money orders were imposed and some criteria was used by the – the district court said they went through the yellow pages. I don't know if people do that anymore. I think it was actually the Internet. They targeted the apartment complexes. They took the money orders. You know, there is – that is some evidence, perhaps, that someone is, I will use the phrase, working class, just like the victims were in Minhas. But that doesn't – in our position is that does not get you to substantial financial hardship. You say it needs to be a more individualized review of each victim's specific circumstances. Yes, in this kind of record, because, again, in Minhas, there were numerous signs that – there was enough record evidence to support the district court's findings that a loss of over $3,000 constituted substantial financial harm. I mean, they – the district court actually grouped the people together, made inferences, and, again, there were two different cases. It looks like the defendant in that case bonded out, committed some more offenses, which resulted in the second case. The first one went to trial. There was plenty of evidence here. Here the district court has paragraphs 30 to 35, six paragraphs, has – therefore, it was substantial financial hardship. That was incorrect. I mean – and going down the list, I mean, if you look at paragraph 34, which is victim MV, that was a loss of $441. AMSCOT reimbursed it. It reimbursed that individual completely. It is acknowledged that the facts in that paragraph were that they fell behind in electric bill, car insurance, and water bill, and that they're still trying to catch up. But at the same time, that does not appear at all to be substantial financial hardship. That is financial hardship, but it's not substantial. So – and I see I'm coming down to my 12-minute mark. I'll reserve the rest of my time for rebuttal. Thank you. Ms. Rose. Good morning. May it please the Court. Yvette Rose on behalf of the United States. The victims in this case, the – based upon the undisputed facts in the pre-sentence report, sustained substantial financial hardship. If you look at the commentary in Application Note 4F, it includes a variety of things that point to what a substantial hardship is, bankruptcy, insolvency. It also – the tone of that seems to be that it focuses on margin, loss of retirement income. That's something above and beyond. I don't know that tone is relevant. The application note is clear, and I think the defense attorney has a pretty good argument here. Did the victim become insolvent? No. Did the victim file for bankruptcy? No. Did the victim suffer substantial loss of retirement, education, other savings, or investment funds? No, except for perhaps savings. We don't really know. The judge didn't find that. Wait a minute. Making substantial changes to his or her employment, such as postponing retirement. No. Making substantial changes to his living arrangements, such as relocating to a less expensive home. No. Almost. They almost couldn't pay, but they did. And six, suffering a substantial harm to the ability to obtain credit. None of those factors were found or indeed occurred in the district court here. That is correct. However, as the application note states and as Judge Martin has noted, it says that these are among the factors that a court can consider. And as the cases, as the courts who have considered this particular application note have noted, and they found substantial hardship based upon factors that were not listed. Ms. Rhodes, in that regard, just to follow up on Judge Murphy's question, the district court seemed to rely on the fact that people who pay rent with money orders, you know, don't have bank accounts. And, you know, these apartment complexes were characteristic of that. Was there any testimony about that offered by the government or anybody? No testimony with regard to that specifically. But I think that as... Was there any other evidence of that? With regard to the... The fact that people who pay their rent with money orders, which seemed to be a finding of the district judge, people that pay their rent with money orders are more vulnerable as victims. They're less financially... Well, I think there's a reasonable inference here is that if you're paying your rent money via money order month after month after month, that you don't have a bank account. I'm not saying that that's always the case, but I'm saying that that's a reasonable inference. I'm not talking about your inference. I'm talking about the district court's inference. And that was one of the findings that the district court made. And I'm just asking you, what was the evidence in the record to support that finding? I don't think that there was evidence per se, but I think that the reason the judge came to that conclusion was because that that's a reasonable inference that you can make. If you're not paying your rent with a personal check, and there were people who were paying their rents with personal checks, but a large number of these people were not paying their rents with a personal check. They were paying with a money order. And I think that's a reasonable inference from the evidence is that if you're not paying your rent with a money order, I mean, not with a check, that there's a reason for it. And the reason for it could be that you don't have a bank account. Judge Martin mentioned earlier that the court has to write an opinion that presumably gives guidance in the future. Where should the distinguishing line be drawn? I mean, it seems to me that without some limitation on the factors that we can state, this can be read, this language you cite, among other factors, can be read to take essentially any loss, no matter how small, into the territory of a five-level or four-level enhancement. You don't look at the monetary loss. The cases that the courts who have ruled upon this say you don't look at the amount of money per se. You look at the impact of a loss on the particular victim because that is the emphasis here. The emphasis here is whether or not there was a hardship sustained to the particular victim. So you have to look at how much money it was and what the impact was. As the cases note, if it's a harm to a lot of money taken from Bill Gates, it's not necessarily the same as taken from the common man. And looking at these victims in this particular case, even the ones who were reimbursed said that they still had hardships that they sustained. It took them months to pay back the money. In one instance, MV, who was in Paragraph 34 of the Precinct's report, said that his rent was stolen. Well, the precinct's report establishes that the rent was stolen in February 2014. He was reimbursed several months later is what he said. And even if you take that to be a year later, he still said, he reported that in June of 2016, he was still trying to catch up. And what was he trying to catch up on? He was trying to catch up on basic necessities of life, including his electric and his car insurance and his water bill. What happened in this case is the victims were not talking about disposable income. We're talking about something that goes to the very heart of their existence. The rent was stolen. The rent, which was going to provide them shelter, was taken. So you're saying, look at the plain language of the guideline first, and if what happened here or in future cases amounts to a substantial financial hardship, which based on the factors you just mentioned there is, enhancement applies, and these are other factors, though not necessarily stated in the application notes that we should consider. Exactly. And also, just another example, another person who was reimbursed, M.W., she said that she was reimbursed. She said also that it took her several months paying between $50 and $100 to pay back what she owed. Can I take you back to the broader legal standard? I think, you know, when you're in the Court of Appeals arguing about facts, you know, that's probably better done in the district court. But in terms of the rule that we're going to make, when the Sentencing Commission passed Amendment 792, it talked about the reason for the amendment. I mean, what I understand is they saw historically that the amendment, that the enhancement was being maybe too broadly awarded in sentences, and they wanted to, you know, cause district courts, sentencing courts to kind of up their game in looking at the individual, you know, victims. Are you with me so far? That's why they added the word substantial. No, well, if I recall correctly, before it was just a tallying up of how many victims that you had. If it was like 100, you got a certain level. If it's 500, you got a certain level. And the courts, well, the commission is getting information that this is not really getting to the heart of the matter or it's not focusing on what they wanted the guidelines to focus on, which was particular harm to victims. Right. So the idea is that sentencing courts look at the individual victims. Yes, ma'am. Okay. And so that brings me back to the district courts kind of general statement. Well, all the people that live in these apartment buildings are kind of vulnerable because they pay their rent with money orders. I mean, doesn't that violate the spirit of why the amendment was enacted? Well, I don't think so because I think that you have to take that in the context. And what was discussed at the sentencing was the facts in this pre-sentence report, which were not disputed with regard to the harm to these people. And the court, perhaps not as artfully as it should have, said that these people were vulnerable in ways that other victims are not necessarily vulnerable. They're vulnerable in that their rent checks were stolen. They're vulnerable in that they were paying with money orders, which the court seemed to believe showed a different level of vulnerability than a person who was paying with a personal check who has got a bank account. They're vulnerable in that they don't have margin. And the record seems to bear that out in that, as you note, what we're talking about is an initial loss between $400 and $800. And I say initial because the pre-sentence report also established that some of these victims were behind on other bills. And when you get behind on other bills, then there are late fees and things of that nature. One victim who is TB, she takes out a loan for 29 percent to pay back the base amount that she was owed, which means that she's in a more difficult position and which might, we submit, fall under subsection six with regard to her ability to obtain credit because she couldn't even get a standard loan. Most people, if they're not this type of vulnerable person. She got credit. She got credit at 29 percent. It was a bad loan. Right. And she was still paying that back two years later, which means that that could also evidence an impact on her credit going forward. But there was no evidence in the record about that. But there's a reasonable inference that can be drawn from this is that she was having problems with her credit because she's already trying to get a loan at 29 percent. I mean, not trying to. That was the only loan that she could get. And being that the focus of this change to the guidelines is particular hardship to victims, you need to look at the victim where the victim is. And these people were not ever going to have an impact. Well, I shouldn't say never, but the facts suggest, the undisputed facts suggest, that some of these hardships are not going to come to them because they're not in a position to lose their savings. They don't have any savings, which is evidenced by the fact that it's a $400, $500, $600, $800 payment, and they don't go to when the rental company says, you got three days, you got five days to pay me this back. They couldn't even pay that back. They had to go to family members. They had to go to friends. They had to get a payday loan at 29 percent to pay it back. And if what we're supposed to be doing with this guidelines is to look at the harm, not necessarily with regard to these six factors because there's the discretion to look beyond that. If you look at the individual harm that these people suffered in this particular case, it's substantial. It took food off of a woman's table for herself and her son. It made people have to go to work to take jobs that they wouldn't have necessarily needed to take or wanted to take. And if that is the focus, and if as the cases of Polson and Meinhaus suggest, if what we're doing is the inquiry's got to be subjective to a certain extent because we have to look at the impact of these particular victims. If it's Bill Gates, you have to view it a certain way. If it's Donald Trump, you view it a certain way. If it's a woman who has difficulty presenting an additional $775 when they tell you your rent is due, you have to look at it a certain way. You have to look at what her circumstances were. And based upon the circumstances that were presented in this case, we believe that these victims suffered substantial financial harm as that is outlined in the guidelines. And we would ask that the court affirm the sentence of the district court. Thank you. Thank you. Thank you. Concerning the issue of publishing opinion that will provide guidance to future litigants, future courts. Along that line. Yes, sir. How do we define insolvent? Versus bankruptcy. Well, some people are not able to pay the fee to go to bankruptcy. So do we say they're unable to meet their bills? They don't have enough income or assets, whatever. We use the bankruptcy definition, that's what I'm saying, of insolvency. In light of the use of the word bankruptcy and the requirement that the word insolvent has to be given some money. The use of the word insolvent and the factors, then they go to bankruptcy and things like that. It's kind of redundant in a way. So it tells me that insolvent means not bankruptcy, but you are basically bankrupt? I don't know. Well, you know the bankruptcy requirement reference chapter 11? So insolvent could refer to a corporation. I think that's the answer, Your Honor. And because, again, even under the older version of the substantial financial hardship enhancement, it was just the number of victims. Well, have any of these particular victims, what's described in the PSI, demonstrated insolvency? I don't think insolvency would be a word that would be applicable to me. That's why I'm asking the question, how do you define it? You have to go borrow money from relatives, et cetera, to go from one week to the next. Are you insolvent? No, I think the answer is in Minhas, my house, in that Minhas said that when the losses of the individuals exceeded $3,000, it looked at that as evidence of a loss of a retirement slash savings fund. So when these individuals suffer the hardship, and it was hardship. We're just contending it wasn't substantial with the exception of the victim in paragraph 32. When they suffer that hardship, it was a loss to savings. I think insolvent would apply to a corporation. Along that line, Your Honor, of how to define it, I mean, in applying, if I answer your question, Your Honor, in applying, you know, the Canons of Statutory Construction, which this court has held recently in the Warren case in 2016, which cited an older precedent as well. I think there is something to be taken away from that Canon of Statutory Construction. I don't know if I'm going to pronounce it correctly. Nostra a soci, which is that words in company of others inform the meaning of the purportedly ambiguous word. And I say that because when we're talking about making substantial changes to his or her employment, such as postponing his or her retirement plans, that specific example, I think, would negate the contention that, I see I'm out of time. May I finish my sentence? No, you go ahead and answer the question. It would negate the contention that a part-time job would qualify or satisfy that requirement. I sound like a broken record here. But, again, there's no evidentiary record about what assets they had. I mean, we know they had to borrow money, but we don't know. There was no exploration of what their balance sheet was as individuals, right? There is just the six paragraphs between 30 and 35, no indication of what their tangible assets were, which may have been able to be sold or sold. I second that point. All right. Thank you, Your Honors.